UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN DOE#3, | : | CIVIL ACTION No: 3:21-cv-515 |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE LEGION OF CHRIST | : | |
| INCORPORATED and IMMACULATE | : | |
| CONCEPTION APOSTOLIC | : | |
| SCHOOL, | : | |
|     Defendants | : | |

## COMPLAINT

Plaintiff, John Doe#3, by and through his undersigned counsel, hereby files this Complaint against Defendants, The Legion of Christ Incorporated and Immaculate Conception Apostolic School, and alleges as follows:

## PARTIES AND JURISDICTION

1.      Plaintiff, John Doe#3, is an adult male who is a citizen and resident of Sacramento, California. Plaintiff is identified in this lawsuit by the pseudonym John Doe#3 in that this case involves facts of the utmost intimacy regarding Plaintiff's childhood sexual abuse, and Plaintiff fears further psychological injury if his name were publicly disclosed. At all material times, the Plaintiff was a student at the Immaculate Conception Apostolic School in Center Harbor, New Hampshire.

2.      Defendant, The Legion of Christ Incorporated, is a Connecticut corporation with its headquarters and principal place of business located at 475 Oak Avenue in Cheshire, Connecticut. At all material times, The Legion of Christ was responsible for the assignment of priests, supervision of priests, and the implementation of policies and procedures at its parishes and Catholic schools,

1

including policies relating to the safety of children and prevention of childhood sexual abuse.

3. Defendant, Immaculate Conception Apostolic School (Hereinafter "I.C.A.S.") is a nonprofit corporation incorporated at 109 Dane Road in Center Harbor New Hampshire with its headquarters and principal place of business located in New Hampshire.

4. Defendant I.C.A.S. was owned and operated by Defendant The Legion of Christ Incorporated. Major decisions for I.C.A.S. were established from The Legion of Christ's headquarters in Connecticut.

5. Connecticut, as the headquarters for The Legion of Christ Incorporated, has the most significant relationship to the dispute and the parties. Connecticut is the state in which Defendant Legion of Christ Incorporated administers all of its subordinate programs, including the administration of the schools it owns and operates. The administration and/or supervision of I.C.A.S. by The Legion of Christ was under the direction and control of Defendant The Legion of Christ Incorporated's headquarters in Connecticut.

6. Defendants The Legion of Christ Incorporated and I.C.A.S. hereinafter are referred to collectively as "Legion of Christ."

7. Venue properly lies in this District in that Defendant, The Legion of Christ Incorporated, is headquartered in this District and made major decisions for Defendants out of its Connecticut headquarters.

8. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 in that this matter is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

## BACKGROUND

9. In approximately 1941, Marcial Maciel founded a religious order that soon thereafter became The Legion of Christ. In approximately 1944, Fr. Maciel was ordained as a Roman Catholic Priest by his uncle, the Bishop of Cuernavaca, Mexico.

10. Beginning at least as early as the 1950's, Fr. Maciel was engaged in the sexual molestation of children, use of drugs and financial improprieties. Some of the children he victimized were children whom he recruited for The Legion of Christ and some were Fr. Maciel's biological children whom he fathered while functioning as the leader of Defendants' organization. Fr. Maciel's actions continued throughout his life until his death in approximately 2008.

11. I.C.A.S. was a private Roman Catholic boarding school for boys in grades seven through twelve. Its objective was to educate high school candidates for the clergy of the Legion. The Legion of Christ founded I.C.A.S in 1982 in Center Harbor, New Hampshire. Sexual abuse by at least three staff members occurred at I.C.A.S. between 1982 and 1995. Legion of Christ employee Francisco Cardona sexually abused students at I.C.A.S. in the 1980s. Legion of Christ employee Fernando Cutanda sexually abused students in 1984-1985 and in 1989. This abuse was known to Legion of Christ priest Fergus O'Carroll at the time, but neither parents nor students were notified. The Legion of Christ permitted Cutanda to be ordained a priest in 1993 despite knowledge of his crimes. Legion of Christ employee Oscar Turrion sexually abused a student in 1992 or 1993. Legion of Christ priest Eduardo de la Torre was aware of this abuse at the time. Turrion was nevertheless permitted to return to I.C.A.S. to help with a "Summer Program" for prospective students in 1995. The Legion of Christ likewise

permitted Turrion to be ordained a priest in 2000. Turrion left the priesthood in 2017 after acknowledging fathering two children while a priest.

## SEXUAL ABUSE OF JOHN DOE#3

12. In 1992-1993, the Plaintiff began his education as an "apostolic" (minor seminarian) at I.C.A.S. The Plaintiff was 13 years of age.

13. During that school year, on a bus ride to or from a hike, Father Oscar Turrion (hereinafter "Fr. Oscar") engaged the Plaintiff and another apostolic in a game of "tickling."

14. Fr. Oscar was a staff member of I.C.A.S. and a superior and supervisor of the Plaintiff at I.C.A.S.

15. The "tickling" incident, which was not discouraged by Fr. Oscar, escalated and the Plaintiff and the apostolic went to Fr. Oscar's room that night to continue the "tickling."

16. Although the Plaintiff does not believe the other apostolic went to Fr. Oscar's room again at night, the Plaintiff continued to go there most nights over the span of a few weeks to a month or more.

17. Fr. Oscar never told the Plaintiff that he should not be coming to his room at night.

18. During these nights in Fr. Oscar's room, Fr. Oscar would kiss the Plaintiff and have him lay in bed next to him, or sometimes on top of him. The kissing was always on the face and initiated by Fr. Oscar.

19. During these nights in Fr. Oscar's room, Fr. Oscar would sometimes rub the Plaintiff's stomach, under his pajamas and touching his skin.

20. On one occasion during these nights, Fr. Oscar did touch the Plaintiff's penis with his hand.

21. During these nights, the Plaintiff does recall at times feeling his erect penis while he was laying next to or on top of Fr. Oscar.

22. Based upon information and belief, the night visits to Fr. Oscar's room became known to other minor seminarians who reported the conduct to Fr. Patrick Walsh, the vice-rector at the time, who then questioned the Plaintiff in vague terms, asking if everything was o.k. and if anything "weird" was going on.

23. The Plaintiff denied any issues, but felt terrible remorse and feelings of guilt.

24. About a week after the questioning of Fr. Patrick, the Plaintiff approached Fr. Eduardo de la Torre, the rector at the time, and told him what was happening. The Planitiff had two meetings with Fr. Eduardo in which he was questioned in detail about the incidents with Fr. Oscar.

25. Despite the Plaintiff's report to the agents, servants and/or employees of the Defendants, Fr. Oscar was allowed to continue as the superior of section B until the end of the 1993 school year, when he was transferred to another center. He was not removed from ministry with minors, and in 1995 he was working at I.C.A.S. again during the summer program (a month-long discernment camp for boys interested in joining the Apostolic School).

26. The above sexual abuse committed upon the Plaintiff as a minor was without the Plaintiff's consent, was against his will and offensive to him.

**COUNT I - NEGLIGENCE**
**(AS TO DEFENDANT THE LEGION OF CHRIST INCORPORATED)**

1. The Plaintiff readopts and realleges all of the allegations set forth in Paragraphs 1 through 26 as though fully set forth herein.

27. Defendant the Legion of Christ was in a special relationship with the Plaintiff of school-student, such that it owed a duty to protect the Plaintiff from foreseeable harms on school grounds and during school-related activities. In this regard, Defendant was *in loco parentis* with the Defendant's students, including the Plaintiff, which imputed on Defendant a duty to use reasonable care to protect the safety, care, well-being, and health of the minor Plaintiff while he was in their care and custody.

28. Defendant's duties encompassed using reasonable care in the retention, assignment and/or supervision of priests and supervising Legionary who would not pose a threat to the safety, care, health, and well-being of minors.

29. Defendant was in a special relationship with Fr. Oscar of employer and employee/agent such that it had a duty to take steps to make sure that Fr. Oscar was safe before giving him access to students.

30. At all relevant times. Defendant knew or in the exercise of reasonable care should have known that Fr. Oscar was unfit to work with minors; dangerous; and a threat to the health, safety, and welfare of the Plaintiff.

31. Defendant knew of the prevalence of sexual abuse by their clergy and brotherhood and that pedophilia was a problem in the recruitment and retention of Catholic clergy.

32. Despite knowledge of Fr. Oscar's serious threat to the health, safety, and welfare of minors, Defendant continued to provide Fr. Oscar with unfettered access to minors, including the Plaintiff.

33. Defendant had a duty in hiring, retaining and supervising Fr. Oscar to prevent foreseeable harm to students and prevent educator sexual misconduct.

34. Defendant had a duty to adequately train teachers and staff in protecting children from educator sexual misconduct.

35. Despite Defendant's knowledge of Fr. Oscar's dangerous sexual propensities, as described above, Defendant breached its duties to protect the Plaintiff by allowing Fr. Oscar to serve as a staff member, giving him access to male students, and by failing to institute any supervision of Fr. Oscar's contact with male students.

36. Defendant breached its duty to protect the Plaintiff by providing Fr. Oscar with unfettered and unsupervised access to the Plaintiff on multiple occasions, needlessly endangering the Plaintiff's health and safety.

37. Defendant breached its duties to the Plaintiff by failing to protect the minor Plaintiff from sexual assault, harassment, and lewd and lascivious acts committed upon the Plaintiff while he was present on school grounds, during school hours, and/or during school-related activities.

38. Defendant breached these duties by failing to use reasonable care to provide a safe environment for the Plaintiff where he would be free from the unwanted sexual advances and dangerous propensities of Fr. Oscar.

39. Defendant breached its duties by failing to establish and implement adequate policies to protect students from sexual abuse by staff.

40. Defendant breached its duties by failing to take corrective action or adequately investigate reports or allegations of sexual misconduct by Fr. Oscar

41. Defendant breached its duty in hiring, retaining and supervising Fr. Oscar, which placed Fr. Oscar in a position to sexually assault the Plaintiff.

42. Given Defendant's constructive and actual knowledge of the dangerous propensities of Fr. Oscar, the sexual assault of the Plaintiff was reasonably foreseeable to Defendant.

43. As a direct and proximate result of Defendant's breach of its duties the Plaintiff was sexually abused by Fr. Oscar while attending I.C.A.S.

44. As a direct and proximate result of the negligence of the Defendant, the Plaintiff suffered and continues to suffer injuries of a serious nature including mental and emotional distress, anxiety, psychological and psychiatric scarring, loss of capacity for the enjoyment of life, inability to lead a normal life, shame, humiliation and costs associated with medical/psychological care and treatment. These injuries and damages are permanent and continuing in nature and the Plaintiff will suffer such losses in the future.

**COUNT II- RECKLESSNESS**
**(AS TO DEFENDANT THE LEGION OF CHRIST INCORPORATED)**

1. Paragraphs 1 through 44 of the First Count are hereby incorporated as Paragraphs 1 through 44 of this Second Count, as if fully set forth herein.

45. Defendant The Legion of Christ, acting through its administrators, agents, and employees, was consciously aware of the fact that it created a substantial risk of injury to the Plaintiff.

46. Notwithstanding the Defendant's conscious awareness of the risk to the Plaintiff, the Defendant failed to take necessary and appropriate steps to reduce or eliminate the risk.

47. Notwithstanding the Defendant's conscious awareness of the risk to the Plaintiff, the Defendant took affirmative steps to exacerbate the risk and to make harm

and injury to the Plaintiff more likely, including, but not limited to, permitting Fr. Oscar to have access to Plaintiff despite knowing of his dangerous propensities, and failing to take immediate and proper steps to limit contact between Fr. Oscar and Plaintiff.

48.   The injuries suffered by the Plaintiff were caused by the reckless or callous indifference, or the wanton misconduct, of the Defendant.

### COUNT III- NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (AS TO DEFENDANT THE LEGION OF CHRIST INCORPORATED)

1.   Paragraphs 1 through 44 of the First Count are hereby incorporated as Paragraphs 1 through 44 of this Third Count, as if fully set forth herein.

45.   The Defendant created an unreasonable risk of causing the Plaintiff emotional distress.

46.   The Plaintiff's distress was foreseeable.

47.   The emotional distress was severe enough that it might result in illness or bodily harm.

48.   The Defendant's conduct was the cause of the Plaintiff's distress.

### COUNT IV- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AS TO DEFENDANT THE LEGION OF CHRIST INCORPORATED)

1.   Paragraphs 1 through 44 of the First Count are hereby incorporated as Paragraphs 1 through 44 of this Fourth Count, as if fully set forth herein.

45.   The Defendant intended to inflict emotional distress or it knew that emotional distress was the likely result of its conduct.

46.   The Defendant's conduct was extreme and outrageous.

47.   The Defendant's conduct was the cause of the Plaintiff's distress.

48. The emotional distress sustained by the Plaintiff was severe.

## COUNT V- BREACH OF FIDUCIARY DUTY
## (AS TO DEFENDANT THE LEGION OF CHRIST INCORPORATED)

1. Paragraphs 1 through 44 of the First Count are hereby incorporated as Paragraphs 1 through 44 of this Fifth Count, as if fully set forth herein.

45. The relationship between the Defendant and Plaintiff, as school-student, was a special relationship between the parties such that the Defendant owed a fiduciary duty to the Plaintiff.

46. This fiduciary duty gave rise to (a) a duty of loyalty on the part of the Defendant to the Plaintiff; (b) an obligation on the part of the Defendant to act in the best interests of the Plaintiff; and (c) an obligation on the part of the Defendant to act in good faith in any manner relating to the Plaintiff.

47. The Defendant advanced its own interests to the detriment of the Plaintiff.

48. The Plaintiff has sustained damages.

49. The Plaintiff's damages were proximately caused by the Defendant's breach of its fiduciary duty.

## COUNT VI - BREACH OF THE SPECIAL DUTY OF CARE
## (AS TO DEFENDANT THE LEGION OF CHRIST INCORPORATED)

1. Paragraphs 1 through 44 of the First Count are hereby incorporated as Paragraphs 1 through 44 of this Sixth Count, as if fully set forth herein.

45. The relationship between the Defendant and Plaintiff, as school-student, was a special relationship between the parties such that the Defendant owed a special duty of care to protect the Plaintiff from criminal acts of its employees and/or agents.

46. The Defendant knew, or should have known, of Fr. Oscar's propensity to engage in sexual abuse of minor students, and failed to protect the Plaintiff from Fr. Oscar.

47. It was reasonably foreseeable that Fr. Oscar would sexually abuse the students in his care and custody, including the Plaintiff.

48. The Plaintiff's damages were proximately caused by the Defendant's breach of its special duty of care to the Plaintiff.

## COUNT VII - NEGLIGENCE
## (AS TO DEFENDANT IMMACULATE CONCEPTION APOSTOLIC SCHOOL)

1. The Plaintiff readopts and realleges all of the allegations set forth in Paragraphs 1 through 26 as though fully set forth herein.

27. Defendant I.C.A.S. was in a special relationship with the Plaintiff of school-student, such that it owed a duty to protect the Plaintiff from foreseeable harms on school grounds and during school-related activities. In this regard, Defendant was *in loco parentis* with the Defendant's students, including the Plaintiff, which imputed on Defendant a duty to use reasonable care to protect the safety, care, well-being, and health of the minor Plaintiff while he was in their care and custody.

28. Defendant's duties encompassed using reasonable care in the retention, assignment and/or supervision of priests and supervising Legionary who would not pose a threat to the safety, care, health, and well-being of minors.

29. Defendant was in a special relationship with Fr. Oscar of employer and employee/agent such that it had a duty to take steps to make sure that Fr. Oscar was safe before giving him access to students.

30. At all relevant times. Defendant knew or in the exercise of reasonable care should have known that Fr. Oscar was unfit to work with minors; dangerous; and a threat to the health, safety, and welfare of the Plaintiff.

31. Defendant knew of the prevalence of sexual abuse by their clergy and brotherhood and that pedophilia was a problem in the recruitment and retention of Catholic clergy.

32. Despite knowledge of Fr. Oscar's serious threat to the health, safety, and welfare of minors, Defendant continued to provide Fr. Oscar with unfettered access to minors, including the Plaintiff.

33. Defendant's duties encompassed using reasonable care in the retention, assignment and/or supervision of priests and supervising Legionary who would not pose a threat to the safety, care, health, and well-being of minors.

34. Defendant had a duty to adequately train teachers and staff in protecting children from educator sexual misconduct.

35. Despite Defendant's knowledge of Fr. Oscar's dangerous sexual propensities, as described above, Defendant breached its duty to protect the Plaintiff by allowing Fr. Oscar to serve as a staff member, giving him access to male students, and by failing to institute any supervision of Fr. Oscar's contact with male students.

36. Defendant breached its duty to protect the Plaintiff by providing Fr. Oscar with unfettered and unsupervised access to the Plaintiff on multiple occasions, needlessly endangering Plaintiff's health and safety.

37. Defendant breached its duties to the Plaintiff by failing to protect the minor Plaintiff from sexual assault, harassment, and lewd and lascivious acts committed upon

the Plaintiff while he was present on school grounds, during school hours, and/or during school-related activities.

38. Defendant breached these duties by failing to use reasonable care to provide a safe environment for the Plaintiff where he would be free from the unwanted sexual advances and dangerous propensities of Fr. Oscar.

39. Defendant breached its duties by failing to establish and implement adequate policies to protect students from sexual abuse by staff.

40. Defendant breached its duties by failing to take corrective action or adequately investigate reports or allegations of sexual misconduct by Fr. Oscar

41. Defendant breached its duty in hiring, retaining, and supervising Fr. Oscar, which placed Fr. Oscar in a position to sexually assault the Plaintiff.

42. Given the constructive and actual knowledge of Defendant concerning the dangerous propensities of Fr. Oscar, the sexual assault of the Plaintiff was reasonably foreseeable to Defendant.

43. As a direct and proximate result of Defendant's breach of its duties, the Plaintiff was sexually abused by Fr. Oscar while attending I.C.A.S.

44. As a direct and proximate result of the negligence of the Defendant, the Plaintiff suffered and continues to suffer injuries of a serious nature including mental and emotional distress, anxiety, psychological and psychiatric scarring, loss of capacity for the enjoyment of life, inability to lead a normal life, shame, humiliation and costs associated with medical/psychological care and treatment. These injuries and damages are permanent and continuing in nature and the Plaintiff will suffer such losses in the future.

## COUNT VIII - RECKLESSNESS
## (AS TO DEFENDANT IMMACULATE CONCEPTION APOSTOLIC SCHOOL)

1. Paragraphs 1 through 44 of the Seventh Count are hereby incorporated as Paragraphs 1 through 44 of this Eighth Count, as if fully set forth herein.

45. Defendant I.C.A.S., acting through its administrators, agents, and employees, was consciously aware of the fact that it created a substantial risk of injury to the Plaintiff.

46. Notwithstanding the Defendant's conscious awareness of the risk to the Plaintiff, the Defendant failed to take necessary and appropriate steps to reduce or eliminate the risk.

47. Notwithstanding the Defendant's conscious awareness of the risk to the Plaintiff, the Defendant took affirmative steps to exacerbate the risk and to make harm and injury to the Plaintiff more likely, including, but not limited to, permitting Fr. Oscar to have access to Plaintiff despite knowing of his dangerous propensities, and failing to take immediate and proper steps to limit contact between Fr. Oscar and Plaintiff.

48. The injuries suffered by the Plaintiff were caused by the reckless or callous indifference or the wanton misconduct of the Defendant.

## COUNT IX - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## (AS TO DEFENDANT IMMACULATE CONCEPTION APOSTOLIC SCHOOL)

1. Paragraphs 1 through 44 of the Seventh Count are hereby incorporated as Paragraphs 1 through 44 of this Ninth Count, as if fully set forth herein.

45. The Defendant created an unreasonable risk of causing the Plaintiff's emotional distress.

46. The Plaintiff's distress was foreseeable.

47. The emotional distress was severe enough that it might result in illness or bodily harm.

48. The Defendant's conduct was the cause of the Plaintiff's distress.

### COUNT X - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AS TO DEFENDANT IMMACULATE CONCEPTION APOSTOLIC SCHOOL)

1. Paragraphs 1 through 44 of the Seventh Count are hereby incorporated as Paragraphs 1 through 44 of this Tenth Count, as if fully set forth herein.

45. The Defendant intended to inflict emotional distress or it knew that emotional distress was the likely result of its conduct.

46. The school's conduct was extreme and outrageous.

47. The school's conduct was the cause of the Plaintiff's distress.

48. The emotional distress sustained by the Plaintiff was severe.

### COUNT XI - BREACH OF FIDUCIARY DUTY
### (AS TO DEFENDANT IMMACULATE CONCEPTION APOSTOLIC SCHOOL)

1. Paragraphs 1 through 44 of the Seventh Count are hereby incorporated as Paragraphs 1 through 44 of this Eleventh Count, as if fully set forth herein.

45. The relationship between the Defendant and Plaintiff, as school-student, was a special relationship between the parties such that the Defendant owed a fiduciary duty to the Plaintiff.

46. This fiduciary duty gave rise to (a) a duty of loyalty on the part of the Defendant to the Plaintiff; (b) an obligation on the part of the Defendant to act in the best interests of the Plaintiff; and (c) an obligation on the part of the Defendant to act in good faith in any manner relating to the Plaintiff.

47. The Defendant advanced its own interests to the detriment of the Plaintiff.

48. The Plaintiff has sustained damages.

49. The Plaintiff's damages were proximately caused by the Defendant's breach of its fiduciary duty.

### COUNT XII - BREACH OF THE SPECIAL DUTY OF CARE
### (AS TO DEFENDANT IMMACULATE CONCEPTION APOSTOLIC SCHOOL)

1. Paragraphs 1 through 44 of the Seventh Count are hereby incorporated as Paragraphs 1 through 44 of this Twelfth Count, as if fully set forth herein.

45. The relationship between the Defendant and Plaintiff, as school-student, was a special relationship between the parties such that the Defendant owed a special duty of care to protect the Plaintiff from criminal acts of its employees and/or agents.

46. The Defendant knew, or should have known, of Fr. Oscar's propensity to engage in sexual abuse of minor students, but failed to protect the Plaintiff from Fr. Oscar.

47. It was reasonably foreseeable that Fr. Oscar would sexually abuse the students in his care and custody, including the Plaintiff.

48. The Plaintiff's damages were proximately caused by the Defendant's breach of its special duty of care to the Plaintiff.

**WHEREFORE**, the Plaintiff respectfully requests that this Court enter judgment against the defendants The Legion of Christ Incorporated, and Immaculate Conception Apostolic School, and award all damages including compensatory damages and special damages, punitive damages, costs, interest, and any other relief that this Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff hereby requests a trial by jury on all issues contained in this Complaint.

Dated: April 14, 2021.

        Respectfully Submitted,
        The Plaintiff,

        BY: /s/ Patrick Tomasiewicz ct01320
            Patrick Tomasiewicz ct01320
            Fazzano & Tomasiewicz, LLC
            96 Oak Street
            Hartford, CT  06106
            Tel: (860) 231-7766
            Fax: (860) 560-7359
            pt@ftlawct.com